UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| MARCUS T. WILLIAMS, | ) | |
| | ) | Civil No.: 15-36-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| KENTUCKY STATE POLICE, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In June 2014, the Kentucky State Police fired Trooper Marcus Williams for habitually falsifying his citation counts over a three year period. Although Williams admits to that misconduct, he argues he was punished more severely because of his race. Since Mr. Williams has not put forth sufficient evidence of a Civil Rights Act of 1964 Title VII violation, the Court GRANTS summary judgment in favor of the Kentucky State Police.

# I

## A

Marcus T. Williams, an African American man, was hired as a Cadet Trooper by the Kentucky State Police ("KSP") in January 2004. [R. 1 at 2.] Throughout his tenure of employment, Mr. Williams consistently received positive feedback. [*Id.*] KSP evaluations of Mr. Williams state that he "projects a positive image;" "has great work attitude;" "is knowledgeable of all criminal and traffic laws, criminal investigation, accident investigation, court proceedings, and Kentucky State Police policies;" and that "[h]is citations and reports are

complete, accurate, well written, and submitted in a timely manner." [*See* R. 13 at 4; R. 13-2 at 2-4.]

From 2011 through 2014, Kentucky State Troopers were required to call in their daily activities at the end of their shifts to a dispatcher. The Troopers were required to self-report the exact number of citations, DUI's, and arrests that they had issued that day, and any citations a Trooper self-reported to the dispatcher were recorded. [*See* R. 13 at 4-5.] Further, the citations and/or case reports a Trooper actually wrote and issued were recorded in a different database, where supporting documentation was always required. [*Id.*]

Around March 2014, the KSP began investigating discrepancies found in Mr. Williams's total citation counts. In short, supervisors noticed that Williams was self-reporting a higher number of citations than the number of citations he actually issued, documented, and logged into the computer system. [*Id.*; *see also* R. 16 at 2.] Mr. Williams initially denied any misconduct but shortly thereafter admitted to falsifying his citations in order to remain in good standing with the KSP. [R. 16 at 2.] On or about July 16, 2014, the KSP terminated Mr. Williams's employment based on a Class A Honesty violation. [R. 1 at 3; *see also* R. 13-28.]

Williams subsequently requested a trial board hearing to appeal his termination, but the trial board upheld the termination on appeal. [*See* R. 13-29.] During the hearing, the KSP introduced evidence that in 2011, Mr. Williams called in 819 citations but actually filed only 765 of those citations. In 2012, Williams called in 812 citations but filed only 517 citations. In 2013, Williams called in 848 citations but only filed 280 citations, and in early 2014, Williams called in 183 citations but filed only 71. [*See* R. 13 at 7; R. 13-30.] In his testimony before the trial board, Williams admitted to falsifying his citation counts. [R. 13-32.] Williams also stated he would not have come forward about the dishonesty on his own accord had he not been caught

2

and accused. [R. 13-34 at 2.] In addition, Mr. Williams testified he always felt he was treated fairly by his supervisors and other KSP employees. [*Id.*] However, Williams thought termination was too severe a punishment for his misconduct and referenced less serious treatment given to other KSP employees he deemed to be similarly situated. [*Id.*; R. 16-1 at 3-5.]

Following the failed trial board appeal, Mr. Williams filed a civil complaint alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964. [R. 1.] Williams claims the KSP have not terminated similarly situated Caucasian employees who engaged in comparable behavior. [*See id.* at 3.] The Kentucky State Police seek summary judgment on the allegations.[1] [*See* R. 13.]

**B**

When sitting in diversity, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). However, when considering summary judgment arguments, a federal court applies the standards of Federal Rule of Civil Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991). *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] For clarity of the record, the Court notes the parties initially briefed KSP's motion for summary judgment in the spring of 2016. [*See* R. 13; R. 16; R. 17.] Subsequently, a discovery dispute arose, and United States Magistrate Judge Edward B. Atkins granted a motion to compel filed by Mr. Williams. [R. 47.] The Court then ordered the parties to file supplemental briefs explaining the effects, if any, of KSP's compelled interrogatory responses on their summary judgment arguments. [R. 49.] For purposes of this opinion, the Court has considered both the original briefing as well as the parties' supplemental briefs. [*See* R. 50; R. 51.]

3

judgment as a matter of law. Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255). Further, the Court must view all facts and draw all reasonable inferences in favor of the nonmoving party. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II**

Title VII claims based on circumstantial evidence are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). According to this framework, a plaintiff must first establish a prima facie case of discrimination. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706-07 (6th Cir. 2006). If the plaintiff does so, he is then entitled to a presumption that his defendant employer discriminated against him in violation of Title VII, and the burden shifts to the defendant to present a "legitimate, nondiscriminatory reason" for the adverse treatment or termination. *Id.* (citing *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). If the defendant satisfies this burden, the plaintiff is tasked with showing the defendant's legitimate and nondiscriminatory reason was actually a "pretext for discrimination." *Id.*

4

With this framework in mind, the Court considers whether Mr. Williams has established a prima facie case of employment discrimination. To demonstrate this, a plaintiff must show (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class, or he was "treated differently than similarly-situated, non-protected employees." *Id.* (citing *DiCarlo*, 358 F.3d at 415). The KSP acknowledges the first three requirements are satisfied in Mr. Williams's case. [*See* R. 13 at 15.] The parties disagree, however, about whether there is any genuine issue of material fact regarding the fourth element.

To satisfy the fourth requirement, Mr. Williams must either demonstrate that he was replaced by someone outside of his protected class or that he was treated differently than other similarly situated, non-protected KSP employees. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (explaining the alternative nature of the fourth prima facie case factor). Mr. Williams has not alleged that he was replaced by a person outside his protected racial class. The key inquiry, then, is whether Williams has proven that similarly situated, non-protected employees received more favorable treatment than he did in light of his misconduct.

In order to prove disparate treatment, Williams must show that the employees to which he compares himself to are, or were, similarly situated to him "*in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citations omitted). While this standard is not necessarily construed by courts to require an exact comparison

5

between the plaintiff and other employees "in every single aspect of their employment," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998), at the very least Williams must allege that all of the "*relevant* aspects of his employment situation were nearly identical" to the non-minority employees who were allegedly treated more favorably. *See, e.g.*, *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (emphasis added) (internal quotation marks and citations omitted).

Mr. Williams has not set forth sufficient proof of disparate treatment to survive summary judgment. In his supplemental response, Mr. Williams details the KSP employees who committed Class A violations between 2009 and the time KSP served its supplemental interrogatories, alleging he is similarly situated to all of them. [*See* R. 50.] But many of the employees Williams describes are irrelevant in light of the KSP's violation classification system. KSP employees can receive Class A violations for Honesty, Conformance to Law, Insubordination, Political Activity, Inefficiency, Conduct Unbecoming, and more. [*See* R. 51 at 6.] Mr. Williams was found to have specifically committed a Class A Honesty violation. [*See* R. 13-28.] Thus, only those employees also found to have committed that same classification of violation are pertinent to the Court's summary judgment analysis.

Notably, of thirteen other employees also found to have committed Class A Honesty violations, all but one of those employees ceased to be employed by the KSP: some were terminated, and others either retired or resigned in the face of their impending termination. [*See* R. 50 at 6-8.] For example, Officer Charles Garland denied that he used force on an individual resisting arrest. [*Id.* at 6; R. 48 at 4-5.] After he admitted to the lie, Garland was dismissed from employment with KSP and lost his appeal at the trial board and Kentucky Personnel Board levels. [R. 48 at 5.] Trooper Bradwick Simmons denied that he was involved in an extramarital

6

affair, and, upon admission of the lie, his employment was terminated. [R. 50 at 6; R. 48 at 3.] Various other employees "resigned in the face of termination" for their dishonest conduct. [*See* R. 48.] Also, all thirteen of the employees who were fired or who resigned were Caucasian. [*Id.*; R. 51 at 9.] This evidence cuts significantly against Mr. Williams's argument that he was treated differently than similarly-situated, non-protected employees.

Moreover, even construing all reasonable inferences in favor of Mr. Williams, *see, e.g.*, *Morales*, 71 F.3d at 535, Williams cannot prove he is similarly situated to the one employee who was merely suspended for his Class A Honesty violation. That trooper, Brandon McPherson, denied using an agency car to follow his girlfriend on the road; however, the next morning, Trooper McPherson called to admit the lie to his supervisor. [*See* R. 50 at 5-6; R. 51 at 9-10; R. 48 at 16.] Trooper McPherson's dishonesty was a "one-time incident." [R. 48 at 16.] This single occurrence differs significantly from Mr. Williams's three year pattern of falsifying citation counts and is, at best, "superficially similar" rather than comparably serious. [*See* R. 13-28 (summarizing Williams's alleged dishonest behavior in 2011, 2012, 2013, and the first two months of 2014)]; *Clayton*, 281 F.3d at 611 (citing *McDonald v. Santa Fe Transp. Co*., 427 U.S. 273, 283 n. 11 (1976)). With no evidence in the record of a similarly situated, non-protected employee who was treated more favorably than Mr. Williams, the Court cannot conclude Williams has demonstrated a prima facie case of discrimination under Title VII.

But in any event, even if Mr. Williams could establish that a similarly situated, non-protected employee received less severe discipline, the KSP still succeeds on its summary judgment motion. Once a plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the defendant to prove a "legitimate, nondiscriminatory reason" for any adverse treatment, *Wright*, 455 F.3d at 706-07 (citing *DiCarlo*, 358 F.3d at 414), and the plaintiff must

then show the defendant's stated reason is actually a pretext for discrimination. *Id.* Williams's failure to draw the Court's attention to even the slightest evidence of pretext on behalf of the KSP also proves fatal to his Title VII claim.

The KSP has offered a legitimate, nondiscriminatory reason for Mr. Williams's termination that is "legally sufficient to justify a judgment for the defendant." *See Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). As a Trooper, Williams likely would have been required to testify in court during criminal proceedings. [R. 13 at 17.] Under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), the prosecution must disclose to defense counsel any exculpatory material or evidence that could be used to impeach government witnesses. The KSP argues they would be required to disclose to the Government, for transfer to defense counsel, evidence that Mr. Williams had previously violated KSP standards of conduct for honesty. [R. 13 at 17.] In turn, "this information would have destroyed [Mr. Williams's] credibility as a witness . . . and would effectively have ended his ability to work as a police officer." [*Id.* at 18.]

To demonstrate pretext at the summary judgment stage, Mr. Williams must "show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proferred reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Servs.*, 557 U.S. 167 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009); *see also Carter v. Toyota Tshusho America, Inc.*, 529 F. App'x 601, 610 (6th Cir. 2013). Put another way, "[p]retext may be shown either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's

proffered explanation is unworthy of credence." *Wright*, 455 F.3d at 707 (quoting *Manzer*, 29 F.3d at 1082.

Here, Williams presents neither direct nor indirect evidence of pretext; instead, he fails to address that requirement altogether, focusing all of his litigation efforts on the alleged disparate treatment. [*See* R. 16.] Sixth Circuit case law makes clear that Mr. Williams is not required to offer proof that "the *real* reason for his termination was discrimination." *Carter*, 529 F. App'x at 609 (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012)). However, he still must "sufficiently call into question the employer's proffered reasons for its employment decision." *Id.* at 610. Because Mr. Williams has not presented any evidence from which a jury could reasonably reject the KSP's explanation of why it fired him, summary judgment in favor of the KSP is appropriate. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2001)).

### III

In sum, Mr. Williams has failed to put forth sufficient evidence of a prima facie case of Title VII discrimination. Further, even if such a case did exist, Williams has also failed to offer any evidence suggesting the KSP's legitimate reason for the termination was merely pretextual. Being otherwise sufficiently advised, the Court hereby **ORDERS** that the Defendant's Motion for Summary Judgment [R. 13] is **GRANTED**. Judgment in favor of the Kentucky State Police will be entered contemporaneously herewith.

This the 21st day of December, 2016.

Gregory F. Van Tatenhove
United States District Judge